[Civ. No. 49850. First Dist., Div. One. Nov. 17, 1981.]

In re VINCENT B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
VINCENT B., Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Neil Rosenbaum, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, and Clifford K. Thompson, Jr., Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, Acting P. J.**—Vincent B., a minor, on his appeal from a commitment order of the juvenile court, contends only that: "The trial court committed reversible error by admitting appellant's in-custody statement into evidence when the prosecution failed to prove the legality of appellant's arrest and detention."

Vincent B., 16 years old, had a juvenile record known of course to the police, of arrests or judicial findings concerning malicious mischief (four separate offenses), possession of a deadly weapon known as a "nunchaku," burglary (three separate offenses), petty theft (two separate offenses), robbery (three separate offenses), receiving stolen property (two separate offenses), and battery. Fingerprints found on yet another burglarized building matched those on Vincent B.'s recorded fingerprint card. Police headquarters communicated to its officers "an alert to arrest him if he's contacted due to his fingerprints being located at the crime scene." He was thereafter arrested. Following a proper, and here unquestioned, *Miranda* (*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]) admonition and waiver of the related rights, Vincent B. stated that he was unfamiliar with the burglarized building, and that he had never been in it. He was found to have been involved in the burglarious act and was committed to the California Youth Authority.

His appeal is expressly "from the order of April 25, 1980, sustaining the petition in this action and from the order of May 9, 1980, declaring him to be a ward of the court and removing him from the home of his parents."

■ On his appeal Vincent B. argues that his arrest was not established as valid, and that his otherwise untainted incriminating statement of never having been on the burglarized premises, was the unconstitutional "fruit of the poisonous tree" of his invalid arrest. (*If the arrest were invalid*, the contention appears to be supported by high authority. See *Brown* v. *Illinois* (1975) 422 U.S. 590, 603-604 [45 L.Ed. 416, 426-428, 95 S.Ct. 2254]; *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455-456, 83 S.Ct. 407]; *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 900 [135 Cal.Rptr. 786, 558 P.2d 872].)

Vincent B. had moved to suppress his highly incriminating statement that he was never in the burglarized premises, which was made without knowledge that his fingerprints had there been found. The issue presented is whether substantial evidence supported the juvenile court's order denying the motion.

■ "When a defendant challenges the sufficiency of the evidence, the test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact." (*People* v. *Pierce* (1979) 24 Cal.3d 199, 210 [155 Cal.Rptr. 657, 595 P.2d 91].) Where constitutional issues appear, as here, we make "'an independent examination of the record,'" but with "respect to conflicting testimony, of course," "'we accept that version of events which is most favorable to the People, to the extent that it is supported by the record.'" (*People* v. *Jimenez* (1978) 21 Cal.3d 595, 609 [147 Cal.Rptr. 172, 580 P.2d 672].) And when "'"two or more inferences can reasonably be deduced from the facts," either deduction will be supported by substantial evidence, and "a reviewing court is without power to substitute its deductions for those of the trial court."'" (*In re Eric J.* (1979) 25 Cal.3d 522, 527 [159 Cal.Rptr. 317, 601 P.2d 549].)

We look to the evidence upon which Vincent B. instantly relies. As noted and as conceded by him, "the *investigating authorities* had probable cause to arrest him for the [subject] burglary: his fingerprints on the broken window gave them probable cause." Further, the above mentioned "alert" had gone out to the department's policemen "to arrest him . . . due to his fingerprints being located at the crime scene." But the testifying police detective assigned to the case stated that he did not personally make the arrest; instead two "other officers" "brought him" to the station. Vincent B. argues that those "other officers" who did not testify *may* have arrested him for some offense as to which they had no

probable cause. He "submits that the mere fact that a police officer *might* have relied on such probable cause to arrest him is not sufficient to prove that appellant was lawfully arrested. To satisfy their burden, the prosecution must show not only that appellant *might* have been arrested for probable cause known to the Vallejo police, but also that the officer who arrested appellant *actually did rely on that* (or other) *probable cause.*"

We are unpersuaded by the argument. The juvenile court could, and presumably did, reasonably infer that Vincent B. was arrested and brought to the police station as a result of the "alert" calling upon the department's police officers to arrest him, "due to his fingerprints being located at the crime scene." (See *In re Eric J., supra,* 25 Cal.3d 522, 527; *People* v. *Pierce, supra,* 24 Cal.3d 199, 210; *People* v. *Jimenez, supra,* 21 Cal.3d 595, 609.) And even though, as speculated by Vincent B., the police *might* have arrested him for some other offense, the juvenile court must be deemed to have found that he was arrested *also* on probable cause that he had committed the subject burglary, as directed by the "alert" to the police department's officers generally.

Furthermore, if, contrary to what the juvenile court, and we, have found to be the more reasonable inference, it should be deemed that the two "other officers" did not have personal knowledge of the probable cause to arrest Vincent B., he would not be aided thereby. For we are concerned with what is sometimes called the "total police activity" concept. In *People* v. *Lara* (1967) 67 Cal.2d 365, 374 [62 Cal.Rptr. 586, 432 P.2d 202] (cert. den., 392 U.S. 945 [20 L.Ed.2d 1407, 88 S.Ct. 2303]), one police department had probable cause for Lara's arrest for murder. It asked another department "to take Lara into custody" on that charge. Applying the "total police activity" concept, the court held that an officer of the latter department "was entitled to make an arrest on the basis of this information, as it was received through official channels." And, it was said, that upon a later motion to suppress evidence claimed to be tainted by an unlawful arrest, it was sufficient to show "that the officer who initiated the request had reasonable cause himself to believe that Lara had committed a felony . . . ." (67 Cal.2d, p. 374.)

We observe also that at the juvenile court hearing at issue, contrary to his present contention, Vincent B., through his attorney, conceded that he was arrested for having committed the charged burglary on the

basis of his fingerprints. The since *abandoned* contention was that the police had no right to possess or use the fingerprint record made as a result of his previous criminal activities. It was argued that the fingerprint record was "irrelevant." And it was said: "Now, essentially what is happening is that the district attorney is unable to use the prints, some prints which were taken at a prior time, which he would like to match with my client. *The only reason my client is before the court today is because he was arrested on some—a card of prints which alleged to have been prints from my client*, as I think the evidence will show, might be matched with some other prints." (*Sic.*) (Italics added.)

■ Such an *evidentiary* admission was properly treated by the juvenile court as proof of "the truth of the assertions; i.e., they constitute affirmative or substantive evidence which the jury or court may believe as against other evidence, including the party's own contrary testimony on the stand." (Witkin, Cal. Evidence (2d ed. 1966) The Hearsay Rule, § 496, pp. 467-468.) Considered as a *judicial* admission, it was "a conclusive concession of the truth of a matter which has the effect of removing it from the issues." (*Id.*, § 501, p. 472.)

■ Further, one may not ordinarily claim error on appeal contrary to a position taken in the lower court (*People* v. *Brawley* (1969) 1 Cal. 3d 277, 294 [82 Cal.Rptr. 161, 461 P.2d 361] [cert. den., 400 U.S. 993 (27 L.Ed.2d 441, 91 S.Ct. 462)]); the principle is expressly made applicable to a "fruit of the poisonous tree" contention which was unraised in the trial court (*People* v. *Shuey* (1975) 13 Cal.3d 835, 847 [120 Cal. Rptr. 83, 533 P.2d 211]).

Affirmed.

Grodin, J., and Ragan, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 10, 1982.

*Assigned by the Chairperson of the Judicial Council.