Filed 1/14/26  P. v. Young CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B336400 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. XSWA929027) |
| v. | |
| JEROME WILLIAM YOUNG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Kelly M. Kelley, Judge. Affirmed with instructions.

Jeffrey Manning-Cartwright, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

**INTRODUCTION**

Defendant Jerome William Young appeals the trial court's order resentencing him pursuant to Penal Code[1] section 1172.75 for convictions he suffered in 1990.

Young's original sentence was 15 years plus 7 to life. He has fully served the determinate term but remains incarcerated for the indeterminate term. As required by section 1172.75, the trial court struck Young's one-year "prison prior" enhancement imposed pursuant to section 667.5, former subdivision (b), reducing his sentence to 14 years plus 7 to life. However, it declined to strike two other enhancements he asked the court to strike under section 1385. The court also did not strike, as Young did not ask it to strike, 14 additional enhancements that were either stayed or ran concurrently with his completed determinate term.

On appeal, Young contends the trial court should have stricken *all* of the 17 total enhancements. Additionally, he contends sentences for eight of his convictions, which he served concurrently with his completed determinate term, should have been stayed under section 654.

We will order stayed those punishments barred by section 654. We will affirm the order in all other respects.

**BACKGROUND**

We draw the facts from Young's opening brief.[2]

---

[1] Undesignated statutory references are to the Penal Code.

[2] Young's publicly available opening brief quotes extensively from a sealed probation report. It is unclear why counsel did not file his brief in redacted and unredacted form pursuant to California Rules of Court, rule 8.46(g)(2)(A) and (B). As they are

Early one morning in June 1989, Young was driving around Torrance in a stolen car with another man. He rear-ended another car, which was occupied only by its female driver. When the woman got out of her car, Young and his accomplice forced her into the stolen car. Using Young's gun, the accomplice held the victim there at gunpoint while Young stole the victim's purse and radio from her car.

Next, Young and the accomplice took turns digitally penetrating the victim's vagina and raping her as they drove around.

Afterwards, they forced her to withdraw money from an automated teller machine and took that money from her.

Young and the accomplice then drove the victim around a bit more before leaving her with the stolen car. She drove it off to find help.

Young and the accomplice were identified by fingerprints left on the stolen car and later arrested.

Young was charged with 17 counts and 16 corresponding enhancements pertaining to the use of a firearm. He was also charged with enhancements for a prior serious felony conviction (§ 667, subd. (a)) and prior prison term (§ 667.5, former subd. (b)). He pled guilty to 16 of these counts and their 15 related firearm enhancements, as well as the prior serious felony and prior prison term enhancements. He was sentenced as follows (boldfaced terms are those contributing to his aggregate term):

---

now public, we refer to facts from the probation report recited in Young's opening brief. In any event, substantially all the same factual content is disclosed in the unsealed portion of the record.

| Ct. | Section | Term | Enhancement | Yrs. | Running |
|---|---|---|---|---|---|
| 2 | 209(b) | 7 to life | 12022.5(a) | 2* | Consecutive |
| 3 | 211 | 5 | 12022.5(a) | 2 | Concurrent |
| 4 | 289 | 6 | 12022.3(a) | 3 | Concurrent |
| 5 | 264.1 | 5 | 12022.3(a) | 3 | Concurrent |
| 6 | 289 | 6 | 12022.3(a) | 3 | Concurrent |
| 7 | 264.1 | 5 | 12022.3(a) | 3 | Concurrent |
| 8 | 289 | 6 | 12022.3(a) | 3 | Concurrent |
| 9 | 264.1 | 5 | 12022.3(a) | 3 | Concurrent |
| 10 | 261(2) (fmr.) | 6 | 12022.3(a) | 3 | Concurrent |
| 11 | 264.1 | 5 | 12022.3(a) | 3 | Concurrent |
| 12 | 289 | 6 | 12022.3(a) | 3 | Concurrent |
| 13 | 264.1 | 5 | 12022.3(a) | 3 | Concurrent |
| 14 | 261(2) (fmr.) | 6 | 12022.3(a) | 3 | Consecutive |
| 15 | 264.1 | 5 | 12022.3(a) | 3 | Concurrent |
| 16 | 211 | 5 | 12022.5(a) | 2 | Concurrent |
| 17 | 12021(a) | 3 | -- | -- | Concurrent |
| -- | -- | -- | 667(a) | 5 | Consecutive |
| -- | -- | -- | 667.5(b) (fmr.) | 1 | Consecutive |

\*        Stayed.

Pursuant to section 1172.75, the Department of Corrections and Rehabilitation identified Young as eligible for resentencing because he "was serving a term for a judgment that includes an enhancement" under section 667.5, former subdivision (b). (See § 1172.75, subd. (b).)

After an initial resentencing order was vacated, Young filed a motion and brief for resentencing in the trial court. In his brief, he asserted he was entitled to have his one-year "prison prior" enhancement stricken. He further asserted he was entitled to a full resentencing. Pursuant to that entitlement and sections 1385 and 12022.53, subdivision (h), he asked that the court strike the

4

two other enhancements for which he was sentenced to consecutive terms: the three-year section 12022.3, subdivision (a) firearm enhancement to count 14; and the five-year section 667, subdivision (a) prior serious felony enhancement.

The trial court struck only the one-year prison prior.

Young timely appealed.

## DISCUSSION

Young makes two main arguments on appeal that his revised sentence is improper, and seeks relief well beyond what he sought before the trial court.

First, he asserts every enhancement should be stricken under section 1385. He raises the same two grounds argued below for striking the count 14 firearm and section 667, subdivision (a) enhancements. (§ 1385, subd. (c)(2)(B), (C).) But he also argues all enhancements should be stricken because of claimed mental health disorders (*id*., subd. (c)(2)(D)), a claim not made below.

Second, Young asserts eight of his terms which ran concurrently with others should have been stayed pursuant to section 654. This argument, too, is raised for the first time on appeal.

Before turning to Young's substantive arguments, we first address the question of mootness. Young argues his appeal is not moot even though he has fully served all sentences he attacks on appeal.

A claim for relief is not moot only if: (i) the claimant is suffering an ongoing harm; and (2) the harm is redressable by the relief the claimant seeks. (*In re D.P.* (2023) 14 Cal.5th 266, 276.)

Young claims harm by the affront to his "dignity" posed by a criminal record showing he "was sentenced to more punishment

5

than he legally should have been." He argues this harm is cognizable and redressable by analogy to suffering a wrongful conviction, challenges to which are not mooted by the completion of the sentence imposed therefor. (See *In re Byrnes* (1945) 26 Cal.2d 824, 827, superseded by statute on another ground as stated in *People v. Lyons* (2009) 178 Cal.App.4th 1355, 1360.) Young acknowledges adverse authority but seeks to distinguish it.[3] We decline to reach the issue unaided by a response from the People.[4] We have discretion to overlook the mootness of an appeal. (See *In re D.P., supra* 14 Cal.5th at p. 282 ["Even when a case is moot, courts may exercise their 'inherent discretion' to reach the merits of the dispute."].) To the extent the appeal is moot, and under the particular circumstances of this case, we exercise that discretion here.

---

[3] In particular, Young acknowledges *People v. DeLeon* (2017) 3 Cal.5th 640, 645–646, in which our Supreme Court rejected a similar attempt to establish a live controversy by analogy to post-release conviction appeals and concluded the right to clear one's record of a conviction presents a special case because of the practical consequences a conviction carries.

[4] The People's brief is deficient in several ways. In addition to failing to address many of Young's points, including the entire argument based on section 654, it contains citations to pages that do not exist in the record, facts that are not present in the case, makes patent factual mischaracterizations of Young's opening brief and the trial court's order, and argues a split of authority that our Supreme Court resolved in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) more than a year before the People filed their brief. Put simply, the People's brief is of negligible value in resolving any issue raised in this appeal.

## I. Young Forfeited His Arguments Under Section 1385

Young correctly notes he was entitled to a full resentencing under section 1172.75 with the benefit of current sentencing rules which were liberalized since his original sentencing. (*Id.*, subd. (d)(2).)

To urge that all his enhancements be stricken, Young relies on section 1385, which is applicable to enhancements, generally, and specifically made applicable to firearm enhancements by section 12022.53, subdivision (h).

Section 1385 affords trial courts discretion to strike enhancements in the furtherance of justice. (*Id.*, subd. (c); *Walker, supra,* 16 Cal.5th at p. 1033.) In exercising that discretion, "the court shall consider and afford great weight to evidence offered by the defendant to prove that any [enumerated] mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety [as defined in the statute]." (§ 1385, subd. (c)(2).) Among the enumerated mitigating circumstances are "[m]ultiple enhancements are alleged in a single case" (*id.*, subd. (c)(2)(B)), "[t]he application of an enhancement could result in a sentence of over 20 years" (*id.*, subd. (c)(2)(C)), and "[t]he current offense is connected to mental illness" (*id.*, subd. (c)(2)(D)).

Young's argument is premised on the trial court's purported failure to give "great weight" to the circumstances in mitigation, and urges us to consider not just the circumstances raised below but also the circumstance of his claimed mental illness, raised for the first time on appeal.

By its terms, section 1385 does not require a trial court to

give "great weight" to mitigating circumstances if dismissal of an enhancement would endanger public safety. (*People v. Mazur* (2023) 97 Cal.App.5th 438, 445; see also *Walker, supra,* 16 Cal.5th at p. 1029 ["[I]f the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors . . . ."].) The trial court expressly declined to discretionarily strike the enhancements as Young requested because he "remains a danger to the public."

For the first time on appeal, Young argues the trial court was obligated to give "great weight" to the mitigating circumstances because "creation of danger to the public is impossible" where striking the enhancements would not affect his release date. Young offers that this is "a point to which the prosecutor adverted at one of the court dates preceding the sentencing." But the prosecutor did not connect this to the question of public endangerment under section 1385, subdivision (c)(2), and neither did Young's trial counsel. Indeed, in Young's motion before the trial court, he had only this to say on the subject of public endangerment: "there is no evidence to support the contention that [Young] is of any threat or risk that would 'endanger public safety' so as to prohibit the court from dismissing the enhancements under § 1385(c)." When the trial court declined to strike any enhancements under section 1385 because "[Young] remains a danger to the public," Young's counsel did not object. We deem this issue forfeited.

"A party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to

the sentence at trial. [Citation.] The rule applies to 'cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons . . . .' " (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.)

*People v. Gonzalez* (2024) 103 Cal.App.5th 215 is informative on this point. There, the court considered whether Gonzalez waived the same issue Young raises now: the function of the "endanger public safety" gate to "weigh[ing] greatly" section 1385, subdivision (c)(2)'s mitigating circumstances. (*Gonzalez,* at pp. 221, 225–226.) The *Gonzalez* court found the issue was not waived because "both in the sentencing position memorandum and during the resentencing hearing, defense counsel advocated for the same legal standard that Gonzalez now advances on appeal." (*Id.* at p. 225.)

Here, Young failed to argue to the trial court that striking the enhancements would not endanger the public when the court concluded Young's present danger was a sufficient basis on which to deny his request. And, in his resentencing brief, he argued only that *he* (as opposed to the striking of the enhancements) was not "of any threat or risk that would 'endanger public safety' " (an assertion the trial court rejected based on evidence before it and which Young does not challenge on appeal). Trial counsel is "charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*People v. Scott* (1994) 9 Cal.4th 331, 353.) Trial counsel having failed to do so, Young cannot raise the issue on appeal. (*Ibid.*)

Because Young failed to preserve the issue of whether the

trial court had to "weigh[] greatly" section 1385, subdivision(c)(2)'s mitigating circumstances, we need not consider his arguments about the effect they should have had if so weighed.

We note Young's argument, offered in the context of his claim trial counsel should have argued his mental illness, that he may have received ineffective assistance of counsel in advocating for relief under section 1385. Young does not raise this point as to trial counsel's failure to object to the trial court's endangerment to public safety conclusion. Even if he had, we would not be inclined to find ineffective assistance of counsel because we are unpersuaded Young could have been prejudiced by any omission having no effect on the term of his incarceration. As Young notes, the right to counsel is guaranteed by the Sixth Amendment to the United States Constitution, and the test for prejudice flowing form ineffective assistance of counsel comes from *Strickland v. Washington* (1984) 466 U.S. 668, 687–688. As the Supreme Court has since observed, "[e]ven though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because 'any amount of [*additional*] jail time has Sixth Amendment significance.'" (*Lafler v. Cooper* (2012) 566 U.S. 156, 165.) The corollary to this observation is that any shortcoming of counsel during sentencing that does *not* result in additional custodial time (or other incremental punishment) lacks Sixth Amendment significance.

## II. We Will Stay Some of Young's Already Served Concurrent Sentences

In contrast to errors in exercising sentencing discretion, "the waiver doctrine does not apply to questions involving the

10

applicability of section 654. Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal." (*People v. Perez* (1979) 23 Cal.3d 545, 549, fn. 3.)

"In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." [Citations.]' [Citation.] Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited." (*People v. Reed* (2006) 38 Cal.4th 1224, 1226–1227.) "Imposition of concurrent sentences is not the correct method of implementing section 654, because a concurrent sentence is still punishment." (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468.)

An appellant who raises section 654 for the first time on appeal lacks the benefit of any specific factual findings directed to its application. "We cannot remand a case to the trial court for the purpose of trying an issue raised for the first time on appeal." (*People v. Sparks* (1967) 257 Cal.App.2d 306, 311.) Therefore, consistent with our general presumption that the trial court properly performed its official duties (Evid. Code, § 664; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913), when considering a section 654 claim for the first time on appeal, we assess the record to determine if it contains facts that would support a lawful decision to impose separate sentences without violating

11

the proscription against multiple punishment.

Young argues he was subjected to impermissible multiple punishments for two sets of convictions: (1) kidnapping for robbery (count 2) and two counts of robbery (counts 3 & 16); and (2) the 12 sex offense counts (counts 4–15) when only six criminal sex acts appear in the record in support of his convictions.

Of these convictions, the sentences for count 2, kidnapping for robbery (seven years to life), and count 14, forcible rape (nine years inclusive of its enhancement) ran consecutively, and Young does not challenge this on appeal. The sentences on all the other robbery and sex crime convictions ran concurrently. He contends only that some of the sentences which ran concurrently should have been stayed.

Again, Young seeks relief which will have no effect on the length of his term. Indeed, even if he had not already served the sentences, it would not have had any effect on the length of his term because there is "little practical difference between imposing concurrent sentences . . . and staying [a concurrent] sentence . . . ." (*People v. Jones* (2012) 54 Cal.4th 350, 353.) Nevertheless, "the law is settled that the sentences must be stayed to the extent that section 654 prohibits multiple punishment." (*Ibid.*)

We agree with Young that the sentence on the first robbery count (count 3) should have been stayed as being part of the same course of conduct as the kidnapping for robbery. Young kidnapped the victim in order to rob her and, immediately after doing so, did, in fact, rob her of her purse and car radio. (See *People v. Beamon* (1973) 8 Cal.3d 625, 639 ["Defendant was convicted of kidnaping for the purpose of robbery and for the commission of that very robbery. We are compelled to the

12

conclusion as a matter of law that on the record here both crimes were committed pursuant to a single intent and objective . . . ."].)

However, we disagree the second robbery count (count 16), occurring after the sex crimes, could not be separately punished. The record contains facts that would support a lawful separate sentence for the second robbery. In *People v. Green* (1996) 50 Cal.App.4th 1076, the court affirmed separate punishments for robbery and carjacking where, like here, the defendant kidnapped and drove the victim from the location of the original robbery, sexually assaulted her, and then stole from her a second time. It reasoned, "[b]ecause the carjacking was . . . separated in time and place from the initial robbery of [the victim's] purse and was interrupted by the sexual attack . . . , the record contains sufficient evidence to support the trial court's explicit finding the taking of the purse and the taking of the vehicle were separate incidents which merited separate and additional punishment." (*Id.* at p. 1085.)

Finally, we turn to the terms imposed concurrently for Young's 12 sex crime convictions. Section 667.6, subdivision (c) represents an exception to section 654 in that it permits discrete punishment for each sex crime enumerated in section 667.6, subdivision (e) occurring on the same occasion with the same victim. (See *People v. Hicks* (1993) 6 Cal.4th 784, 792.) In effect, section 667.6, subdivision (c) eliminates for enumerated offenses the interpretation of "act or omission" in section 654 as embracing multiple acts committed incident to one objective (so as to constitute an indivisible course of conduct). The sex crimes for which Young was convicted are each among those enumerated in section 667.6, subdivision (e). Thus, Young does not dispute separate punishment is permitted for each act supporting his

13

convictions even though they were arguably part of a single course of conduct. What he *does* dispute is his susceptibility to more than one punishment for each act. Young's point is well founded.

Section 667.6, subdivision (c), does not allow multiple punishment of discrete criminal acts. (*People v. Siko* (1988) 45 Cal.3d 820, 826.) Here, Young was subjected to 12 unstayed punishments for his 12 sex crime convictions: six counts of rape in concert (§ 264.1), four counts of sexual penetration (§ 289), and two counts of forcible rape (§ 261, former subd. (2)). However, as Young observes, the record only describes a total of six acts by him and his accomplice (four acts of digital vaginal penetration and two acts of rape) to support these convictions. Young should not have been subjected to two unstayed sentences for each of these six acts. (*People v. Pearson* (2012) 53 Cal.4th 306, 333 [where two men committed "only a single indivisible act of intercourse" on their victim, "the trial court erred in imposing sentence[s] for both forcible rape in concert . . . and forcible rape"].)

Accordingly, we agree Young's concurrent sentences for his sex crime convictions on counts 4, 5, 6, 8, 10, and 12 should have been stayed.

## DISPOSITION

The trial court is directed to modify the abstract of judgment to show the sentences for counts 3, 4, 5, 6, 8, 10, and 12 as stayed under section 654, not concurrent. In all other respects, the judgment is affirmed.


                              RICHARDSON, J.
        WE CONCUR:
                    LUI, P. J.                    CHAVEZ, J.


                              14